UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION at LEXINGTON

CIVIL ACTION NO. 10-405-GWU

JIMMY SAYLOR,                                                                    PLAINTIFF,

VS.                     **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.

### INTRODUCTION

Jimmy Saylor brought this action to obtain judicial review of the unfavorable portion of a partially favorable administrative decision on his application for Disability Insurance Benefits (DIB). The case is before the court on cross-motions for summary judgment.

### APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1. Is the claimant currently engaged in substantial gainful activity? If so, the claimant is not disabled and the claim is denied.

2. If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities? If not, a finding of non-disability is made and the claim is denied.

3. The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed

1

        in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments). If so, disability is conclusively presumed and benefits are awarded.

4. At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work. If so, the claimant is not disabled and the claim is denied. If the plaintiff carries this burden, a prima facie case of disability is established.

5. If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir. 1997).

Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

In reviewing the record, the court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical

3

vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. § 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e);

however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Id. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The Administrative Law Judge (ALJ) concluded that Saylor, a 50-year-old[1] man with a high school education, suffered from impairments related to being status post coronary artery bypass grafting in two vessels, carpal tunnel syndrome, peripheral neuropathy, degenerative disc disease of the lumbar spine, multiple myalgias, and fibromyalgia. (Tr. 11, 15). While the plaintiff was found to be unable to return to his past relevant work, the ALJ determined that he retained the residual functional capacity to perform a restricted range of light level work. (Tr. 12, 15). Since the available work was found to constitute a significant number of jobs in the national economy, the claimant could not be considered totally disabled. (Tr. 15-

---

[1] This was the plaintiff's age on December 31, 2008, the date he was last insured for the purposes of DIB. (Tr. 15).

10-405  Jimmy Saylor

16).  The ALJ based this decision, in large part, upon the testimony of a vocational expert.  (Tr. 16).

The court must first determine the time period relevant to this appeal.  Saylor alleged a disability onset date of January 20, 2003 on his DIB application filed January of 2008.  (Tr. 135).  The plaintiff had previously filed a DIB application in October of 2004, which was denied at all administrative levels and became final on March 26, 2007.  (Tr. 9).  The ALJ declined to reopen the prior denial decision.  (Id.).  This denial is now final under the doctrine of <u>res</u> <u>judicata</u> and, so, the earliest the claimant can qualify for DIB is March 27, 2008.  The ALJ found that Saylor's DIB-insured status expired on December 31, 2008.  (Tr. 11).  Therefore, the plaintiff must prove he became disabled between these dates in order to qualify for DIB.

After review of the evidence presented, the undersigned concludes that the administrative decision is supported by substantial evidence.  Therefore, the court must grant the defendant's summary judgment motion and deny that of the plaintiff.

The hypothetical question presented to Vocational Expert Jackie Rogers included such limitations as (1) an inability to stand for more than four hours a day in an eight-hour day, and walk for more than three hours in an eight-hour day;[2] (2) an inability to continuously lift more than 10 pounds, occasionally lift more than 20 pounds, frequently carry more than 10 pounds or occasionally carry more than 20

---

[2] The claimant would be able to sit for eight hours a day.  (Tr. 56).

pounds; (3) an inability to ever use the hands for repetitive pushing, pulling, or fine manipulation;[3] (4) an inability to use the left foot for the repetitive operation of foot controls; (5) an inability to more than occasionally bend, climb and reach above shoulder level; (6) an inability to ever squat or crawl; and (7) a "mild" restriction involving exposure to moving machinery, unprotected heights, temperature extremes, dust, fumes, and chemicals or driving automobiles. (Tr. 56-57). In response, the witness identified a significant number of jobs which could still be performed. (Tr. 57). Therefore, assuming that the vocational factors considered by Rogers fairly depicted Saylor's condition, then a finding of disabled status, within the meaning of the Social Security Act, is precluded.

The hypothetical question fairly characterized Saylor's condition as required by Varley. In July of 2008, Dr. Alam Khan, a treating physician, opined that the plaintiff would be able to sit for a total of eight hours, stand for a total of four hours, and walk for a total of three hours. (Tr. 720). Dr. Khan indicated that the claimant would be restricted to lifting and carrying up to 20 pounds occasionally, lifting 10 pounds continuously and carrying 10 pounds frequently. (Id.). Simple grasping would not be restricted but Saylor would not be able to perform pushing, pulling, or fine manipulation with either the left or right hand. (Id.). The doctor indicated that he would be never be able to squat or crawl and would only occasionally be able to

---

[3] The plaintiff would be able to perform simple grasping with both the left and right hands. (Tr. 56).

10-405  Jimmy Saylor

bend, climb or reach above shoulder level.  (Id.).  Finally, the plaintiff would be mildly restricted with regard to exposure to fumes, gases, dust, unprotected heights, moving machinery, and marked changes in temperature or humidity, and driving an automobile.  (Id.).  The ALJ gave this opinion "great weight" and presented all of these limitations to the vocational expert, who identified a significant number of jobs in response to the aforementioned hypothetical question.  (Tr. 14).  Therefore, the ALJ's findings were consistent with the opinion of a treating source.

Dr. Khan had previously stated in April of 2007 that Saylor was totally disabled.  (Tr. 353). He reiterated this opinion in May of 2008.  (Tr. 516).  Such an opinion goes to the ultimate issue in the case and is not binding on the administration under the federal regulations.  20 C.F.R. § 404.1527(e)(1).  A superseding opinion by a treating physician is also entitled to greater weight than an earlier report by the same source.  Garner v. Heckler, 745 F.2d 383, 389 (6th Cir. 1984).  When the physician's specific functional restrictions issued in July of 2008 were considered by the vocational expert, a significant number of jobs were noted to remain available.  Thus, Dr. Khan's disability opinion appears inconsistent with his actual findings regarding the plaintiff's physical ability.  Therefore, the ALJ properly rejected this opinion in favor of the specific physical limitations.

Dr. Azhar Aslam also treated Saylor.  (Tr. 566-572, 721-728, 760-774, 790-795).  The only restrictions he placed on the plaintiff's activities were a need to

exercise regularly, watch his diet and lose weight. (Tr. 568). Therefore, this opinion also does not support the plaintiff's disability claim.

Dr. Robert Brown reviewed the record in July of 2008 and opined that Saylor could perform light level work, restricted from a full range by a "limited" ability to push or pull with the upper extremities, an inability to more than occasionally climb ramps or stairs, an inability to ever climb ladders, ropes or scaffolds and to balance, a limited ability to reach in all directions, a need to avoid concentrated exposure to temperature extremes and a need at avoid all exposure to hazards. (Tr. 573-580). The ALJ's findings were essentially consistent with this opinion and it does not support the plaintiff's claim of total disability.

Dr. Barry Burchett examined Saylor in April of 2008 and noted an impression of coronary artery disease, being status post two vessel coronary artery bypass grafting, chronic chest wall tenderness following sternotomy, possible fibromyalgia, hypertension and obesity. (Tr. 502). Dr. Burchett did not identify the existence of more severe physical restrictions than those found by the ALJ. (Tr. 499-505). Thus, this report also does not support the plaintiff's disability claim.

Dr. Karen Saylor, another treating source, indicated that the plaintiff would be limited to less than a full range of sedentary level work in May, 2007 and April, 2008.[4] (Tr. 355, 506). The ALJ indicated that Dr. Saylor's April, 2008 opinion was

---

[4] Dr. Saylor opined that the plaintiff was totally disabled in January of 2005. (Tr. 238). This was before the relevant time period and would not be binding on the ALJ

9

10-405  Jimmy Saylor

not supported by sufficient objective medical data and was inconsistent with other evidence of record. (Tr. 14). The ALJ rejected the opinion as binding in favor of that of Dr. Khan, who was also a treating source whose opinion offset that of Dr. Saylor. (Id.). The ALJ did not specifically address the doctor's May, 2007 findings. This might be seen as a violation of the requirement of 20 C.F.R. § 404.1527(d)(2) which requires an ALJ to give good reasons for not crediting the opinion of a treating source. Wilson v. Commissioner of Social Security, 378 F. 3d 541, 544 (6th Cir. 2004). However, the same rationale for rejecting these May, 2007 restrictions exists as for rejecting the May, 2008 opinion and the claimant has not asserted that this omission constituted reversible error. Ultimately, the ALJ did rely upon the opinion of another treating source in Dr. Khan. Therefore, under these circumstances, the court finds the error to be harmless.

Saylor asserts that the ALJ erred by failing to consider the combined effects of all of the impairments from which he suffers. However, the court has already determined that the hypothetical question fairly depicted his condition. Thus, the ALJ implicitly considered the combined effects of all of his impairments. The ALJ specifically indicated that he had considered all of the impairments in combination. (Tr. 12). An ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination in determining that the claimant does not meet the Listings. Loy v. Secretary of Health and Human

---

under 20 C.F.R. § 404.1527(e)(1).

10-405  Jimmy Saylor

Services, 901 F.2d 1306, 1310 (6th Cir. 1990).  Therefore, the court must reject the claimant's argument.

Saylor argues that his medical problems would prevent him from maintaining employment and, so, he could not meet the duration requirements for substantial gainful activity.  The plaintiff cites the Ninth Circuit Court of Appeals case of Gatliff v. Commissioner of Social Security, 172 F.3d 690 (9th Cir. 1999).  However, in Gatliff, the record contained considerable evidence that the claimant would not be able to maintain employment more than a couple of months and the ALJ had even acknowledged this fact.  Gatliff, 172 F.3d at 692.  In the present action, Saylor has not identified similar evidence suggesting that he would not be able to maintain employment.  Therefore, the court must reject the plaintiff's argument.

The undersigned concludes that the administrative decision should be affirmed.  A separate judgment and order will be entered simultaneously consistent with this opinion.

This the 15th day of September, 2011.



Signed By:
G. Wix Unthank
United States Senior Judge

11